**Sylvia Cardwell JACKSON, Plaintiff,**

v.

**George M. WILEMAN, D.D.S., Defendant.**

**No. 79–0029–L(B).**

United States District Court, W. D. Kentucky, Louisville Division.

April 19, 1979.

O. Grant Bruton, Gary M. Weiss, Louisville, Ky., for plaintiff.

Stephen F. Schuster, Louisville, Ky., for defendant.

## MEMORANDUM

BALLANTINE, District Judge.

This diversity malpractice action is before the Court on several motions. In view of the Court's ruling on the defendant's motion to dismiss for want of in personam jurisdiction over the defendant, we do not reach the merits of the other motions. Plaintiff, a resident of Kentucky, seeks to maintain this action against the defendant, a dentist who is an Ohio resident. She sought to obtain service on the defendant under the Kentucky Long Arm Statute, KRS 454.210. Defendant has moved to quash the service and to dismiss.

Taking as true the allegations of plaintiff's complaint, it appears that plaintiff, in 1975, lived in Ashland, Kentucky. Defendant practiced his profession in Ironton, Ohio. Plaintiff traveled to Ironton where she became a patient of defendant. She alleges—and for the purpose of this memorandum it will be assumed—that defendant negligently designed and fitted her with a dental prosthesis, as the result of which she alleges that she has been damaged. She presently resides in Louisville, Kentucky.

KRS 454.210(2)(a) reads in part as follows:

"(2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim rising from the person's:

\* \* \* \* \* \*

2. Contracting to supply services or goods in this commonwealth;

\* \* \* \* \* \*

4. Causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth, provided that the tortious injury occurring in this commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the commonwealth;

5. Causing injury in this commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth.

■ Plaintiff argues that since the damage occurred in Kentucky, that fact, standing alone, is sufficient to obtain jurisdiction over the defendant under the cited statutes. This argument will not withstand analysis. Plaintiff cites in support of her position a quotation taken out of context from KRS 454.210(2)(a)2. A reading of the entire section demonstrates beyond cavil its inapplicability to the factual situation before the Court. Defendant does not regularly do or solicit business in Kentucky. In fact, he does no business nor does he solicit any business in Kentucky. He does not derive substantial revenue in goods used or consumed or services rendered in Kentucky. Further, it cannot be found that the alleged tortious injury occurred in Kentucky. Assuming arguendo that the injury did occur in Kentucky, it did not arise out of defendant's doing or soliciting business in Kentucky, nor did it arise out of a persistent course of conduct or the derivation of substantial revenue within Kentucky.

■ Plaintiff urges that the installation of the prosthesis is a sale of goods which will bring the defendant within the ambit of KRS 454.210(2)(a)5. We are cited to no authority for this rather extreme position. It is well settled that sales of products or goods in the forum state will suffice to bring the defendant within the provisions of the Long Arm Statute. Plaintiff's argument that the prosthesis is a sale of goods stands unsupported by any case authority. The only authority which the Court has found is *Cox v. Cartwright,* 96 Ohio App. 245, 121 N.E.2d 673 (1953). In that case the Ohio Court of Appeals said:

"We do not overlook the claim of the appellant that the dentist is liable on 'a warranty of suitability and fitness for the bridges and teeth he sells.'

There is no claim that the material used in the manufacture of the teeth was of inferior quality and not equal to the standard of implied warranty. Indeed, it may be fairly stated that only a strained view of the professional relationship between the dentist and his patient could class the dentist in the category of a salesman of false teeth. The furnishing and the fitting for use of the dentures were all a part of the professional services, and the way in which these services were rendered, as compared to similar services performed by dentists who exercised the average degree of skill, care and diligence of members of the same profession practicing in the same or similar locality, marks the right or lack of right to a recovery for the tort of malpractice. The standards set for professional services govern the right and the duty in actions in tort, in contrast to actions for mere breach of contract."

The courts seem to be divided on the question whether the application or installation of devices such as pacemakers and surgical pins are to be treated as a sale of goods under the Uniform Commercial Code and thus subject to the provisions of Section 402A of the Restatement of Torts. See 54 A.L.R.3d 258. The Kentucky court has apparently not faced this question directly, but we believe that the Kentucky Supreme Court would treat the installation of devices, including dental prostheses, as a service rather than a sale and thus outside the scope of Section 402A. In *Holton v. Pfingst,* Ky., 534 S.W.2d 786 (1975), the Court of Appeals of Kentucky, now the Supreme Court of Kentucky, said:

"Despite the current trend in the law to impose strict liability on manufacturers and sellers of products for the protection of consumers, the law has, nevertheless, continued to afford the medical profession and other learned professions a privilege which it has ordinarily refused to other groups even before the strict liability trend, and that is the freedom to set their own legal standards of conduct. The policy justification implicitly advanced is the respect which the courts have had for the learning of a fellow profession accompanied by reluctance to overburden it 'with liability based on uneducated judgment.' Prosser, [Handbook of the Law of Torts] supra at 165."

Assuming, however, arguendo that Kentucky would treat the manufacture and fitting of dental prostheses as a sale of goods, the Court finds that *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), is dispositive of this argument. There, the Court said:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95." 357 U.S. at 253, 78 S.Ct. at 1239.

Plaintiff asks the Court to rely on *Thermothrift Industries, Inc. v. Mono-Therm Insulation Systems,* 450 F.Supp. 398 (W.D.Ky. 1978). *Thermothrift* is inapposite since in that action the parties seeking to quash the return on the summons had purposefully availed themselves of the privilege of acting in Kentucky. No such activity can be found in the matter now before the Court.

In *Wright v. Yackley,* 459 F.2d 287 (9th Cir. 1972), the Court, in affirming the district court's dismissal for lack of in personam jurisdiction, wrote:

"In the case of personal services focus must be on the place where the services are rendered, since this is the place of the receiver's (here the patient's) need. The need is personal and the services rendered

are in response to the dimensions of that personal need. They are directed to no place but to the needy person herself. It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it. The traveling public would be ill served were the treatment of local doctors confined to so much aspirin as would get the patient into the next state. The scope of medical treatment should be defined by the patient's needs, as diagnosed by the doctor, rather than by geography."

The Court is convinced from a reading of the authorities cited above and a consideration of the undisputed facts, that it lacks in personam jurisdiction of the defendant and that this action should be dismissed. Plaintiff complains that dismissal of this action would deprive her of any remedy for the alleged negligence of the defendant. Conceding the truth of this argument, the Court is in no position to assume jurisdiction of an action which clearly should have originally been brought in Ohio.